Randy L. Betz, Plaintiff-Appellant,

v.

Diamond Jim's Auto Sales,
Defendant-Respondent.†

Court of Appeals

No. 2012AP183. Submitted on briefs October 2, 2012.
—Decided October 16, 2012.

2012 WI App 131

(Also reported in 825 N.W.2d 508.)

† Petition for Review filed 11-15-12.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Timothy J. Aiken, Vincent P. Megna* and *Susan M. Grzeskowiak of Aiken & Scoptur, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Lawrence J. Drabot, Sara C. Mills* and *Remzy D. Bitar of Crivello Carlson, S.C.*, Milwaukee.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. FINE, J. This case comes to us because Randy L. Betz and Diamond Jim's Auto Sales settled Betz's lawsuit against Diamond Jim's without the knowledge of their respective lawyers. Betz's lawyers sought fee-shifting attorney's fees from Diamond Jim's pursuant to WIS. STAT. § 100.18(11). The trial court rejected their claim in an order dated December 8, 2011. Although designated by the circuit court as "the final order of the court for the purposes of appeal," and the order also indicated that "no further orders are contemplated by the court," the circuit court entered an order on January 9, 2012, dismissing Betz's claims against Diamond Jim's "on the merits with prejudice." (Uppercasing and bolding omitted.) The notice of appeal, dated January 23, 2012, names the December 8 order. Neither party contends that we do not have jurisdiction over the circuit court's January 9, 2012, order. *See* WIS. STAT. RULE 805.18(1) ("The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party.") (made applicable to appellate proceedings by WIS. STAT. RULE 809.84). We reverse the circuit court order dismissing Betz's claims because we conclude that the settlement agreement on which the circuit court relied was void.

## I.

¶ 2. Betz bought a used car from Diamond Jim's and was unhappy. He sued Diamond Jim's and asserted the following claims: (1) advertising injury, alleged to violate WIS. STAT. § 100.18; (2) intentional fraudulent misrepresentation; (3) alleged violation of WIS. STAT. § 218.0116, which regulates the licensing of automobile

dealers; and (4) punitive damages. Betz's complaint sought damages and, in connection with Diamond Jim's alleged violation of §§ 100.18 and 218.0116, the costs and attorney's fees permitted for a recovery under those sections. *See* WIS. STAT. §§ 100.18(11) & 218.0163(2). Betz's complaint was filed by Aiken & Scoptur, S.C., by Vincent P. Megna, Esq., and Susan M. Grzeskowiak, Esq. The law firm of Crivello Carlson, S.C., by Lawrence J. Drabot, Esq., appeared for Diamond Jim's, answered Betz's complaint, and sought dismissal of all of Betz's claims.

¶ 3. On May 17, 2010, fewer than two months after the filing of Diamond Jim's answer, Megna sent to Drabot a "Settlement Offer." (Uppercasing and bolding omitted.) The offer sought: "$10,750.00 in damages," and "$5,900.00 in attorney fees and costs (made payable to Aiken & Scoptur, S.C.)." The offer was not accepted, and by letter dated September 28, 2010, Drabot told Megna that he was "authorized to extend the following settlement offer to your client": that "Diamond Jim's will repurchase the vehicle, subject to inspection and verification of condition, for reimbursement of the purchase price less mileage (calculated at $.50 per mile)," and that "Diamond Jim's will pay $2,000 towards plaintiff's attorney's fees." Diamond Jim's offer to settle was also not accepted.

¶ 4. Thomas Letizia, who, according to his affidavit in the Record, was, at times material to this appeal, "the general manager of Diamond Jim's Auto Sales," circumvented Aiken & Scoptur, S.C., Megna, and Grzeskowiak, and settled the case with Betz directly. His affidavit recited that he "was one of the Diamond Jim's representatives involved in settlement discussions with Randy Betz, individually, and without the participation

of counsel, in April 2011." As material, the "Settlement Agreement and Mutual Release" (uppercasing omitted) provided:

> The purpose of this Agreement is the Amicable Resolution of the Action without the need for further litigation, the relinquishment by each of the parties of any claim or cause of action arising from or relating to the issues in the Action, and the mutual release of all liability.
>
> Therefore, in consideration of the following mutual promises and releases made by the Parties as well as other good and valuable consideration, the Parties to this Agreement agree that this Agreement is entered into as a compromise of disputed claims and does not constitute of liability [sic] or obligation whatsoever on behalf of any of the parties pursuant to the respective claims.
>
> The parties agree to solve the action [sic] pursuant to the following specified terms:
>
> A) James Letizia and Diamond Jim's Auto Sales agree to Pay to Randy L. Betz the sum of $15,000 paid in form of check number 7114;
>
> B) Randy L. Betz hereby agrees that [his action against Diamond Jim's] Shall be dismissed.

(Underlining in original.) The settlement agreement was dated April 4, 2011, and was signed by Betz and Thomas Letizia. The document identified Letizia as "Authorized agent for James Letizia and Diamond Jim's Auto Sales." According to Thomas Letizia's affidavit, James Letizia owned Diamond Jim's.

¶ 5. By letter dated April 5, 2011, Drabot told Grzeskowiak that the case had been settled: "I have been advised that the parties have reached a confiden-

tial settlement. I am enclosing a Stipulation to Dismiss for your review and signature." Drabot's affidavit in the Record averred that he knew nothing about Diamond Jim's settlement discussions on April 4:

> On April 4, 2011, I received a telephone call from one of plaintiff's attorneys, Susan Grzeskowiak, advising that Randy Betz and Thomas Letizia, individually, had been involved in settlement discussions.
>
> I was not involved in, nor was I aware of settlement negotiations between the parties prior to the notice from Susan Grzeskowiak, and I was not aware of or involved negotiations [sic] between the parties that resulted in settlement between them.
>
> On or about April 5, 2011, I was advised that a settlement had been reached between Diamond Jim's and Randy Betz.
>
> On April 5, 2011, I advised Mr. Betz's attorney of the settlement agreement.

(Paragraph numbering omitted.)

¶ 6. Needless to say, Betz's lawyers were dismayed, and they sought a rainbow of relief from the circuit court: attorney fees from Diamond Jim's under Wis. Stat. § 100.18, disclosure of what Drabot referred to as the "confidential settlement agreement," and leave to amend Betz's complaint as an "intervening plaintiff" asserting a claim for an intentional interference with their contractual relationship with Betz.[1] Although initially refusing to reveal the "settlement agreement," Drabot complied with the circuit court's direction to disclose it. Diamond Jim's sought to reform the "settlement agreement" if the circuit court ruled that it did

---

[1] The motion did not mention the fee-shifting claim under Wis. Stat. § 218.0163(2).

not relieve Diamond Jim's of statutory obligations to pay Betz's attorney fees. The circuit court ruled that the agreement was a valid "unambiguous, binding contract" that released Diamond Jim's of any further obligation in connection with Betz's claims, and denied all the motions. As we have seen, the circuit court also dismissed Betz's lawsuit against Diamond Jim's.

¶ 7. Before this case started, Betz hired Megna to vindicate what he asserted was Diamond Jim's fast and loose dealing in connection with the car he bought from the dealer.[2] The retention agreement is dated February 12, 2010, and, as material, recites the following from Betz's viewpoint:

- "I understand that I do not have to pay any attorney fees unless my attorneys recover money for me in this case."

- "I understand that Sec. 100.18, Wis. Stats., _____ is a fee shifting statute. This means if I win at trial or settle my case during litigation, the defendant is usually responsible for paying my attorney fees based on my attorney's hourly rate. I understand that the Law Offices of Vince Megna is accepting my case with the agreement that it will look to the defendant for payment of attorney fees pursuant to the fee shifting provision once a lawsuit has been filed."

- "In addition to all other fees paid to the Law Offices of Vince Megna by the other side, I agree to pay the Law Offices of Vince Megna 40% of any punitive damages recovered, whether through settlement or judgment." (Bolding omitted.)

---

[2] The retention agreement is between Betz and "Law Offices of Vince Megna." (Allcaps omitted.) Aiken & Scoptur, S.C is listed in the retention agreement as "Of Counsel." (Bolding omitted.) No one on this appeal contends that this changes anything.

- If a settlement is reached prior to a lawsuit being filed in my case, I understand that the defendant may not be responsible for payment of my attorney fees. In this event, the Law Offices of Vince Megna agrees to charge a flat rate attorney fee in the amount of _____."

- "I understand that the Law Offices of Vince Megna will need to pay costs and expenses. In the event my case is lost through no fault of my own, I understand that the Law Offices [of] Vince Megna will not bring a claim against me for these costs and expenses."

- "I understand that my attorney has the right to 'terminate' me as a client. The Law Offices of Vince Megna will be entitled to fees for the work done at its hourly rate and its costs, not to exceed 33 1/3% of my gross recovery."

- "I understand that I have a right to terminate my attorneys. However, if I do so, I will be responsible for the Law Offices of Vince Megna fees and costs due on the date of termination, not to exceed 33 1/3% of my gross recovery."

(All blank lines in original.)

## II.

¶ 8. As the circuit court recognized, settlement agreements are contracts. *American Nat'l Property and Cas. Co. v. Nersesian*, 2004 WI App 215, ¶ 14, 277 Wis. 2d 430, 440, 689 N.W.2d 922, 927. Unless ambiguous, they are enforced as they are written. *Woodward Communications, Inc. v. Schockley Communications Corp.*, 2001 WI App 30, ¶ 9, 240 Wis. 2d 492, 498, 622 N.W.2d 756, 759–760 ("If the terms of the contract are plain and unambiguous, it is the court's duty to con-

strue the contract according to its plain meaning even though a party may have construed it differently."). Courts will not, however, enforce contracts that violate public policy. *Selmer Co. v. Rinn,* 2010 WI App 106, ¶ 15, 328 Wis. 2d 263, 275–276, 789 N.W.2d 621, 627 (" 'Wisconsin courts have always recognized the importance of protecting parties' freedom to contract.' We do this by ensuring each party performs according to its agreement. We will ordinarily enforce the parties' agreement, provided the contract does not impose obligations that are contrary to public policy.") (citations omitted). There are no disputed facts that are material to this appeal, and we review *de novo* whether the settlement agreement may be enforced. *See Jezeski v. Jezeski,* 2009 WI App 8, ¶ 10, 316 Wis. 2d 178, 184, 763 N.W.2d 176, 179 (Ct. App. 2008).

¶ 9. This appeal argues that Betz's settlement agreement with Diamond Jim's violates public policy and should not be enforced because permitting represented parties in fee-shifting cases to negotiate settlements behind the backs of their lawyers would strike a death-blow to the legislature's use of fee-shifting statutes to vindicate the public interest by giving lawyers an incentive to take cases where persons have suffered palpable injury but whose monetary damages would be too meager to sustain a lawsuit. *See Kolupar v. Wilde Pontiac Cadillac, Inc.,* 2007 WI 98, ¶ 55, 303 Wis. 2d 258, 289, 735 N.W.2d 93, 108 ("[A]n important purpose of fee-shifting statutes is to encourage injured parties to enforce their statutory rights when the cost of litigation, absent the fee-shifting provision, would discourage them from doing so."); *Shands v. Castrovinci,* 115 Wis. 2d 352, 358–359, 340 N.W.2d 506, 509 (1983). Thus, for example, we have recognized that a storage-rental agreement that purported to restrict the lessor's

liability for fees and costs under a fee-shifting statute was void because it violated public policy. *Cook v. Public Storage, Inc.*, 2008 WI App 155, ¶¶ 84–85, 89, 314 Wis. 2d 426, 473–475, 477, 761 N.W.2d 645, 668–669, 670. *See also Wisconsin Central Farms, Inc. v. Heartland Agricultural Marketing, Inc.*, 2006 WI App 199, ¶¶ 24–25, 296 Wis. 2d 779, 798–799, 724 N.W.2d 364, 373–374 (A contract provision that negated the statutory right to recover double damages was void because it was against public policy.).

■■

¶ 10. Persons hire lawyers to help them navigate through the complicated shoals that often attend disputes. *See* SCR ch. 20, Rules of Professional Conduct for Attorneys, Preamble [2] ("As advisor, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications.").[3] Thus, as the parties recognize, to keep the playing field level, a lawyer may not contact a represented party behind the back of that party's lawyer. *See* SCR 20:4.2 ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."). Additionally, a lawyer may not have someone else do what SCR 20:4.2 forbids. SCR 20:8.4 ("It is professional miscon-

---

[3] The Supreme Court Order filed January 5, 2007, promulgating Wisconsin's Rules of Professional Conduct for Attorneys, SCR 20, noted that the Preamble was "not adopted, but will be published and may be consulted for guidance in interpreting and applying the Rules." 2007 WI 4, http://www.wicourts.gov/sc/rulhear/DisplayDocument.html?content=html&seqNo=27737 (last visited October 5, 2012).

duct for a lawyer to: **(a)** violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."). *See also* American Bar Association Comment [4] printed in conjunction with SCR 20:4.2. ("A lawyer may not make a communication prohibited by this Rule through the acts of another.").[4]

■■■■

¶ 11. The American Bar Association Comment [4] also opines: "Parties to a matter may communicate directly with each other, and a lawyer is not prohibited from advising a client concerning a communication that the client is legally entitled to make." Wisconsin law, however, is not so clear cut; there are circumstances when a party's negotiation with a represented party but without the presence or consent of the represented party's lawyer voids the agreement they reach. *Bussian v. Milwaukee, Lake Shore & Western Railway Co.*, 56 Wis. 325, 335, 14 N.W. 452, 456 (1882), set out the general rule:

> We think that no release obtained from the plaintiff after an action has been commenced and counsel employed, in the absence of the plaintiff's counsel, and without his consent or knowledge, should bind the party unless the utmost good faith is shown on the part of the defendant in obtaining the same. When a party has employed an attorney to prosecute an action, such

---

[4] The Supreme Court Order filed January 5, 2007, promulgating Wisconsin's Rules of Professional Conduct for Attorneys, SCR 20, noted that American Bar Association Comments were "not adopted, but will be published and may be consulted for guidance in interpreting and applying the Rules." 2007 WI 4, http://www.wicourts.gov/sc/rulhear/DisplayDocument.html?content=html&seqNo=27737 (last visited October 5, 2012).

> attorney ought to be consulted if a compromise of such action be sought, and ordinarily it would be an act of bad faith on the part of the client and the opposite party to compromise the action without the consent of or without consulting such attorney.

The general rule recognized by *Bussian* is not hard and fast, however, especially when the settlement is between close relatives and there is no indication of sharp practice. *See Bishop v. Bishop*, 171 Wis. 172, 183, 176 N.W. 776, 780 (1920) (distinguishing *Bussian* because it did "not go to the extent of impeaching a settlement made between brothers, where the transaction is as free from the taint of unfair dealing as here"). The law elsewhere, albeit sparse, is similar, and recognizes that important public-policy considerations play a role in determining whether courts will enforce a settlement agreement negotiated behind the backs of a represented party's lawyer. *See Castillo v. Spiliada Maritime Corp.*, 937 F.2d 240, 247 (5th Cir. 1991). *Castillo* was a seaman wage-claim case and the plaintiffs were natives of the Philippines who had retained counsel to pursue their claims. *Id.*, 937 F.2d at 241–242. The ship owner negotiated directly with the seamen and got a settlement. *Id.*, 937 F.2d at 242–243. Noting that seamen are given special protection by federal law, *Castillo* held that they were entitled to a jury determination as to whether the un-counseled releases were valid. *Id.*, 937 F.2d at 243–247.

¶ 12. The law in Wisconsin and elsewhere is clear: Although, generally, nothing forbids a party from settling with a represented party without the presence or consent of the represented party's lawyer, such settlements, like all contracts, are scrutinized in light of public-policy interests. The public-policy considerations

here are obvious; as we have seen, the legislature created fee-shifting statutes to help persons who might not otherwise get legal redress. To permit one side to go behind the backs of the other side's lawyers in order to get a settlement that removed the fee-shifting incentives that prompted the lawyers to take the case, would nullify the legislative fee-shifting scheme.

■ ■

¶ 13. It is true, of course, that the client retains the right to settle or not settle, on terms that he or she deems appropriate. SCR 20:1.2 ("A lawyer shall abide by a client's decision whether to settle a matter."). But to sustain the settlement here, where, as we have seen, Betz assigned to Megna Betz's rights to collect attorneys fees, violates the public-policy considerations inherent in the legislature's creation of the fee-shifting statutes. Just as, for example, Diamond Jim's could not have eliminated or limited by one of its sales contracts a customer's recourse to a fee-shifting statute, *see Cook*, 2008 WI App 155, ¶¶ 84–85, 89, 314 Wis. 2d at 473–475, 477, 761 N.W.2d at 668–669, 670; *Wisconsin Central Farms*, 2006 WI App 199, ¶¶ 24–25, 296 Wis. 2d at 798–799, 724 N.W.2d at 373–374, it may not circumvent a fee-shifting statute by negotiating a settlement with a represented party without the presence or consent of that party's lawyer. The settlement agreement here is void. *See Bussian*, 56 Wis. at 335, 14 N.W. at 456.

¶ 14. The circuit court erroneously upheld the "settlement agreement," and thus erroneously dismissed Betz's complaint against Diamond Jim's. Accordingly, we reverse the circuit court's dismissal, and the parties are now back to square one—they can settle if they wish, or try the case if they wish. The briefs do not tell us whether Diamond Jim's paid Betz under the settlement agreement. If it did, the circuit court should

ensure that the money is returned. The other matters, addressed by the circuit court's December 8, 2011, order are moot.

*By the Court.*—Order of dismissal reversed and cause remanded.