James Cook, Zachary Luckett and Quincle Cook,
Plaintiffs-Respondents,

Friebert, Finerty & St. John, S.C.,
Creditor-Respondent,

v.

Public Storage, Inc.,
Defendant-Appellant.†

Court of Appeals

*No. 2007AP2077. Submitted on briefs July 2, 2008.
—Decided September 25, 2008.*

2008 WI App 155

(Also reported in 761 N.W.2d 645.)

† Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Paul F. Heaton, Beth Ermatinger Hanan,* and *Christopher P. Dombrowicki* of *Gass Weber Mullins LLC,* Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Matthew W. O'Neill* of *Friebert, Finerty & St. John, S.C.,* Milwaukee.

Before Dykman, Vergeront and Lundsten, JJ.

¶ 1. VERGERONT, J. This appeal arises out of a dispute between Public Storage, Inc., a company that rents self-service storage units, and Zachary Luckett and his parents, who stored property in one of the units after Luckett signed a rental agreement. After Public Storage auctioned the stored property because of unpaid rent, Luckett and his parents, James and Quincle Cook, filed this action alleging violations of WIS. STAT. § 704.90 (2005–06),[1] which governs self-service storage facilities, and other claims. The jury returned a verdict in favor of the plaintiffs, awarding them compensatory and punitive damages. The court entered judgment on the verdict, and it ordered attorney's fees under § 704.90(12).

¶ 2. Public Storage challenges a number of the circuit court's rulings that involve construction of WIS. STAT. § 704.90, construction of the rental agreement and construction of WIS. STAT. ch. 177, governing abandoned property. In addition, Public Storage contends the circuit court erred in permitting the issue of punitive damages to go to the jury and in awarding attorney's fees.

¶ 3. We conclude the circuit court correctly denied Public Storage's dispositive motions and dismissed its counterclaims, except that the court erred in not dismissing the Cooks' claims for breach of contract and breach of the duty of good faith and fair dealing. In reaching these conclusions we hold: (1) the Cooks had standing to sue for violations of WIS. STAT. § 704.90 under the "any person injured . . ." provision of § 704.90(12) because we construe the rental agreement to authorize them to store their property in the leased

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

space; (2) the Cooks were not lessees under the rental agreement; (3) the definition of "last-known address" in § 704.90(1)(am) includes the correct address actually provided by Luckett to Public Storage even though Public Storage wrote it incorrectly on the rental agreement, and that definition also includes addresses provided by the Cooks acting on Luckett's behalf; and (4) neither § 704.90 nor Wis. Stat. ch. 177, the Uniform Unclaimed Property Act, required or authorized Public Storage to keep the excess proceeds from the sale of the property instead of returning them to the plaintiffs when at least one of them contacted Public Storage shortly after the sale.

¶ 4. Although the circuit court erred in not dismissing the Cooks' claims for breach of contract and breach of the duty of good faith and fair dealing, we conclude the error was harmless.

¶ 5. We also conclude the circuit court's jury instruction on a "commercially reasonable" sale as required by Wis. Stat. § 704.90(6)(a)7. did not misstate the law; the circuit court correctly allowed the issue of punitive damages to go to the jury; and it correctly decided that the exculpatory clause in the rental agreement did not relieve Public Storage from liability and the limitation on liability clause was unenforceable.

¶ 6. With respect to attorney fees, we conclude the circuit court did not erroneously exercise its discretion based on the facts before it. However, a remand is required in light of our ruling that the Cooks' two contract claims should have been dismissed.

¶ 7. Accordingly, we affirm the judgment for compensatory and punitive damages and reverse and remand the award of attorney's fees for further consideration consistent with this opinion.

437

## BACKGROUND

¶ 8. In May 2004, Luckett signed a rental agreement with Public Storage to lease a storage unit in the City of Milwaukee for a monthly rental fee of $74. At the time he lived with his parents, James Cook and Quincle Cook (the Cooks), at 9060 N. 85th Street. The rental agreement identifies Luckett as "Lessee." The agreement states that "Lessee advises 'Operator' [Public Storage] that Lessee intends to allow the following persons to have access to the Premises: James Cook; Kim Cook [Luckett's brother]; Quincle Cook."

¶ 9. Luckett and his parents moved their property into the leased space. A few items belonged to Luckett and to his brother Kim, but most of it belonged to their parents—household items, furniture, and clothing that they planned on taking with them when they moved out of state to retire.

¶ 10. Over the course of the next year, the rental payments were generally late, but as of June 10, 2005, the account was fully paid through the end of June. On July 22, Public Storage sent a notice of default for the July rent, followed a week later by a notice of lien and sale. Both notices were returned as undeliverable, and the plaintiffs did not receive notice of the default or the sale. The parties disputed whether Luckett paid the July rent and what information Public Storage had regarding a correct address for Luckett and for the alternate contact listed on the rental agreement— Luckett's brother, James Anthony.[2]

---

[2] "James Cook," referring to Luckett's brother, James Anthony Cook, is listed as the alternate contact person on the rental agreement. We refer to him as "James Anthony" to distinguish him from his father, James Cook.

¶ 11. Public Storage held a blind auction of the contents of the storage unit on August 26, 2005, and the winning bid was $660. After the deduction of back rent, late fees, lien fees, and sales tax, the records of Public Storage showed $407 as "pre-paid rent." Public Storage did not send a letter to any of the plaintiffs informing them of the remaining $407. There was a dispute between the parties over Quincle Cook's efforts to pay the rent in August and on how and when the plaintiffs learned of the sale and of the $407 in excess proceeds. The $407 was returned to Luckett in December 2005, after his attorney wrote to Public Storage.

¶ 12. The plaintiffs' complaint alleged a violation of WIS. STAT. § 704.90(2m) and (5)(b) for failure to provide the requisite notice of default before the sale and a violation of subd. (6)(a)7. for failure to conduct the auction in a commercially reasonable manner. The complaint also alleged a breach of contract, breach of the duty of good faith and fair dealing implied in the contract, conversion of the property and of the $407 in excess proceeds, and a statutory theft claim regarding the excess proceeds.[3] The plaintiffs sought compensatory and punitive damages.

¶ 13. Public Storage moved to dismiss all the Cooks' claims on the ground that they did not sign the rental agreement. The court denied this motion and granted the plaintiffs' motion to dismiss Public Storage's counterclaims against Luckett alleging breach of the rental agreement and trespass. These rulings were based on the court's conclusion that under the

---

[3] The other claims alleged in the complaint, including other allegations of violations of WIS. STAT. § 704.90, were either resolved against the plaintiffs before trial or were not pursued by them.

439

rental agreement the Cooks were permitted to store their property in the leased space.

¶ 14. Public Storage also moved for partial summary judgment. The court decided there were disputed issues of fact warranting a trial on the WIS. STAT. § 704.90 claims concerning notice and commercial reasonableness of the sale and on the claims for breach of contract, breach of the duty of good faith and fair dealing, conversion, and statutory theft.

¶ 15. At the close of the plaintiffs' case, the court granted the plaintiffs' motion to submit the issue of punitive damages to the jury.

¶ 16. The jury made the following findings and awards in response to the special verdict questions:

1. Luckett did not pay the amount due and owing for the month of July.

2. Public Storage failed to send notices of default to the last-known addresses of Luckett and the alternate contact, and these failures caused harm to the plaintiffs.[4]

3. Public Storage failed to conduct the auction in a commercially reasonable manner and a commercially reasonable sale would have generated $5,000.

4. Public Storage breached the rental agreement when it sold the plaintiffs' personal property at the auction and breached its duty of good faith and fair dealing.

5. Public Storage unlawfully converted the plaintiffs' property when it sold it at the auction.

---

[4] The court itself answered "yes" to this special verdict question: "Did Public Storage fail to provide a notice of default to the last-known address of the alternate contact name listed on the Rental Agreement?"

6. The property was worth $19,000.

7. Public Storage unlawfully converted the excess proceeds from the auction, but did not commit statutory theft.

8. Public Storage acted maliciously toward the plaintiffs or in intentional disregard of their rights, warranting a $100,000 punitive damages award.

¶ 17. The court denied Public Storage's post-verdict motions, including its motion regarding punitive damages and its motion to relieve it from all liability or limit its liability to $5,000 under clauses in the rental agreement. The court entered judgment against Public Storage for $118,375 ($19,000 in compensatory damages plus $100,000 in punitive damages less a credit of $625 relating to the amount received from the auction). The court granted the plaintiffs' motion for attorney's fees under Wis. Stat. § 704.90(12) and ordered Public Storage to pay plaintiffs' counsel $262,500 in attorney's fees plus $19,654.02 in costs and disbursements.

## DISCUSSION

### I. Public Storage's Motion to Dismiss the Cooks' Claims

¶ 18. Public Storage contends the circuit court erred in denying its motion to dismiss all the Cooks' claims because it erred in construing the rental agreement to authorize the Cooks to use the leased space to store their property. This error, according to Public Storage, led the circuit court to erroneously conclude that the Cooks had standing to bring claims for violations of Wis. Stat. § 704.90 and that they were lessees under the rental agreement. Because all the plaintiffs'

441

claims are premised on the Cooks' right to store their property in the leased space, Public Storage asserts, the circuit court should have dismissed all their claims and none should have gone to trial.[5]

A. Standard of Review

¶ 19. Whether the complaint states a claim for relief presents a question of law, which we review de novo. *Swan v. LaFollette*, 231 Wis. 2d 633, 637, 605 N.W.2d 640 (Ct. App. 1999). We construe the complaint liberally and assume the facts pleaded are true. *Id.* at 637–38. In addition, we all draw all reasonable inferences in favor of the plaintiff. *Id.* at 638. When, as in this case, a contract is attached to the complaint, we

---

[5] Public Storage organizes its argument around the issues of the proper construction of Wis. Stat. § 704.90 and the rental agreement, without distinguishing between the procedural context of its motion to dismiss, its motion for summary judgment, and the evidence at trial. While in its initial brief Public Storage appears to challenge the sufficiency of the evidence on the notice violations of § 704.90 and whether they caused injury, in its reply brief Public Storage states it is challenging "the court's denial of its dispositive motions" regarding the Cooks' status under the statute and under the rental agreement. There is no developed argument challenging the sufficiency of the evidence to support the jury's verdict on the claims of notice violations, including whether they caused injury. Therefore, we address only the denial of Public Storage's dispositive motions—its motion to dismiss and its motion for summary judgment. We address these motions separately because they each have a different factual basis—the complaint for the motion to dismiss and the summary judgment submissions for that motion—and they require different analyses. In these analyses, we do not consider the trial testimony that Public Storage refers to or the trial testimony that the plaintiffs refer to in response.

treat the terms of the contract as part of the pleading for purposes of analyzing the pleading on a motion to dismiss for failure to state a claim. *See* WIS. STAT. § 802.04(3); *De Ruyter v. American Family Mut. Ins. Co.*, 2004 WI App 162, ¶ 3, 275 Wis. 2d 696, 686 N.W.2d 736.

B. The Cooks' Claims for Violations of WIS. STAT. § 704.90

¶ 20. WISCONSIN STAT. § 704.90 governs the leasing of space in a self-service storage facility. Among other provisions, it imposes requirements on the operator for providing notice in the event of default before the operator may sell the personal property stored in the leased space and it specifies the procedure for the sale. Section 704.90(5) and (6). The circuit court concluded that, because the Cooks were allowed to store their property in the leased space under the terms of the rental agreement, they were "lessees" within the meaning of § 704.90(1)(c)[6] and were also "any person[s] injured by a violation of this section . . ." under § 704.90(12).

¶ 21. Although we conclude later in this opinion that the Cooks were not "lessees" under the rental agreement, we need not decide whether they were "lessees" under the statutory definition because we conclude they are authorized to bring their claims for violations of the statute under WIS. STAT. § 704.90(12).

---

[6] WISCONSIN STAT. § 704.90(1)(c) provides:

(1) Definitions. In this section:

. . . .

(c) "Lessee" means a person entitled to the use of a leased space, to the exclusion of others, under a rental agreement, or the person's sublessee, successor or assign.

¶ 22. We begin our analysis by examining the allegations of the complaint, including the rental agreement, with respect to the Cooks' relationship to the leased space. In interpreting the rental agreement, we first decide if the disputed language is plain or ambiguous. *See Kernz v. J.L. French Corp.*, 2003 WI App 140, ¶¶ 9–10, 266 Wis. 2d 124, 667 N.W.2d 751. If it is plain, we apply the language as drafted. *See id.*, ¶ 9. If it is ambiguous, various rules may be applied to resolve the ambiguity. *Seitzinger v. Community Health Network*, 2004 WI 28, ¶ 22, 270 Wis. 2d 1, 676 N.W.2d 426.

¶ 23. Public Storage's position is that, under the terms of the rental agreement, only Luckett was authorized to store his property in the leased space. Public Storage points out that Luckett is plainly identified as the lessee in the agreement and the agreement is between him, as the lessee, and Public Storage. Public Storage acknowledges that, directly after the addresses of the lessee and of an alternate contact and a description of the space, the rental agreement provides: "Lessee advises Operator that Lessee intends to allow the following individuals to have access to the Premises," and the Cooks' names, as well as that of their son Kim, are listed. However, Public Storage points to a provision later in the agreement, the first sentence in a section titled "Use of Premises and Property and Compliance with Law," which provides: "Lessee shall store only property that belongs to Lessee." According to Public Storage, when this provision is read together with the "access" provision, the contract plainly states that the Cooks are authorized to enter the premises, but only Luckett may store his property there.

¶ 24. The plaintiffs respond that allowing "access" to the premises may be reasonably read as allowing use

of the premises, and, at most, the provision that "Lessee may store only property that belongs to Lessee" creates an ambiguity as to whether the persons with authorized access may store their property there. An ambiguity, assert the plaintiffs, is construed against the drafter. *Id.*

¶ 25. We agree with the plaintiffs that the disputed language is ambiguous. A reasonable construction of the provision allowing specified individuals to have "access" to the premises is that the lessee is allowing them to use the premises to store their property. The provision is in a prominent place near the beginning of the rental agreement. A person signing an agreement such as this would reasonably expect that he or she is allowed to let the persons specified in the provision store their property in the leased space. We do not agree that the provision that "Lessee shall store only property that belongs to Lessee" removes all ambiguity and makes it plain that the specified persons allowed access may not store their property but may only enter the premises. To a person signing this type of agreement, which persons can store property in the leased space is a much more obvious concern than which persons can enter without storing their property. The prominent place of this information in the agreement reinforces the view that this is a significant aspect of the agreement. A person signing this agreement might reasonably think that the provision on storing "only property that belongs to Lessee" does not apply to exclude the property of persons identified at the beginning of the agreement as being allowed access by the lessee.

¶ 26. Public Storage does not dispute the plaintiffs' contention that, if there is an ambiguity, it must be construed against Public Storage. We take this as a

concession by Public Storage. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994). Accordingly, we construe the ambiguity against Public Storage and conclude that, because the Cooks were "allowed access" under the rental agreement, they were allowed to store their property in the leased space.

¶ 27. With this construction of the rental agreement, the complaint, viewed favorably to the plaintiffs, alleges that the Cooks were authorized to store their property in the leased space, they did so, and violations of the notice and sale provisions of the statute caused them to lose their property.

¶ 28. We now turn to the statutory language at issue, WIS. STAT. § 704.90(12):

> (12) *Right to action for violation.* In addition to the remedies otherwise provided by law, *any person injured by a violation of this section* or any rule promulgated under sub. (9) may bring a civil action to recover damages together with costs, disbursements and reasonable attorney fees, notwithstanding s. 814.04 (1), and any equitable relief as may be determined by the court.

(Emphasis added.)

¶ 29. When we interpret a statute, we give the language its common meaning, unless there are technical or specially defined words. *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret the language in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and we interpret it reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48.

446

¶ 30. In addition, when a person's standing to assert a claim for a violation of a statute is at issue, we determine whether the party seeking standing was injured in fact—or, at the motion to dismiss stage, whether there are allegations to this effect—and whether the interest allegedly injured is arguably within the zone of interests to be protected by the statute. *See Zehetner v. Chrysler Fin. Co.*, 2004 WI App 80, ¶ 12, 272 Wis. 2d 628, 679 N.W.2d 919.

¶ 31. The key statutory language in WIS. STAT. § 704.90(12) is "any person injured by a violation of this section . . . ." The plain language does not restrict recovery to a "lessee," which is specifically defined in § 704.90(1)(c) and is used throughout the statute. In *Zehetner*, we construed similar language in a remedy provision in the Wisconsin Consumer Act (WCA): "[a] person injured by violation of this chapter may recover actual damages . . . ." WIS. STAT. § 427.105(1) (1999–2000).[7] We stated:

> Additionally, WIS. STAT. § 427.105(1), defining the remedies available under the Wisconsin Consumer Act, provides, in part, that "[a] *person* injured by violation of this chapter may recover actual damages and the penalty provided" elsewhere in the chapter. (Emphasis added.) It does not restrict recovery to "customers." And although Chrysler Financial, at oral argument before this court, maintained that the legislature simply erred in referring to "person" rather than "customer" in § 427.105(1), we see no basis for assuming such legis-

---

[7] As a separate basis for the plaintiff's standing in *Zehetner v. Chrysler Financial Co.*, 2004 WI App 80, ¶¶ 1, 14–17, 21, 272 Wis. 2d 628, 679 N.W.2d 919, we concluded she was a "customer" under WIS. STAT. § 421.301(17) (1999–2000) although she did not sign the retail installment agreement.

lative inadvertence. Indeed, we must assume the opposite.

Zehetner, 272 Wis. 2d 628, ¶ 20 (citations omitted).

¶ 32. Our reasoning in *Zehetner* applies here. The legislature could have limited the persons who could sue under WIS. STAT. § 704.90(12) to "lessees" as defined in § 704.90(1)(c), but it did not do so. We therefore conclude that "any person injured . . ." in § 704.90(12) is not limited to a "lessee" as defined in § 704.90(1)(c).

¶ 33. Although a person need not be a "lessee" as defined in WIS. STAT. § 704.90(1)(c) in order to bring an action under § 704.90(12), the person must nonetheless meet the standing requirement of injury to an interest that is arguably within the zone of interests to be protected by the statute. *See Zehetner*, 272 Wis. 2d 628, ¶ 12. We conclude that, based on the allegations of the complaint, including the rental agreement, the Cooks meet this standard. The text of the statute shows that it is intended to protect the interests of persons in the personal property they are storing in leased self-service storage space. The text of the statute does not indicate an intent to restrict the protection to persons who are "lessees" within the definition of § 704.90(1)(c). We conclude the statute protects the interests in personal property of persons who, like the Cooks, are authorized to store their property in a leased space pursuant to the rental agreement, whether or not they are "lessees" under § 704.90(1)(c). The complaint adequately alleges injury to these interests as a result of violations of the statute.[8]

[8] Public Storage does not discuss *Zehetner* in its reply brief and does not argue that the Cooks do not come within the scope

448

¶ 34. Accordingly, the Cooks have standing to pursue their claims for violations of WIS. STAT. § 704.90 and the circuit court properly denied Public Storage's motion to dismiss these claims.

C. The Cooks' Contract Claims

¶ 35. The circuit court concluded that, because the rental agreement authorized the Cooks to store their property in the leased space, they became lessees under the rental agreement and therefore could bring a claim for breach of contract and for breach of the duty of good faith and fair dealing implied in every contract (collectively the "contract claims"). Public Storage contends that, under the plain language of the rental agreement, only Luckett is a lessee under the rental agreement and only he may sue for its breach or for breach of the duty of good faith and fair dealing. The plaintiffs respond to this argument by simply asserting that the fact that the Cooks were authorized to store their property in the leased space "gave them standing to pursue the contract claims." However, they do not explain why the Cooks are therefore lessees under the rental agreement or on what other theory they have "standing."

¶ 36. We agree with Public Storage that the Cooks are not lessees under the plain language of the rental agreement. Only Luckett is identified as "Lessee" at the beginning of the rental agreement and only Luckett signed the agreement as "Lessee." Although we have concluded above that the rental agreement allows the Cooks to store their property in the leased space, it does

___

of WIS. STAT. § 704.90(12) if they were allowed to store their property in the leased space under the rental agreement and if they were injured by a violation of the statute.

not follow that they are lessees under the rental agreement. Nor is there any ambiguity created: their status as authorized users of the leased space is not inconsistent with Luckett's status as sole lessee, that is, the sole individual who entered into the agreement with Public Storage.

¶ 37. Accordingly, we conclude that, because the Cooks are not parties to the agreement, they do not have a claim against Public Storage for breach of the rental agreement. For the same reason, they do not have a claim for breach of the duty of good faith and fair dealing implied in the agreement. The circuit court therefore erred in denying Public Storage's motion to dismiss these claims. We will discuss later in Section VII the effect of this error on Public Storage's request for a new trial.

D. The Cooks' Conversion and Statutory Theft Claims

¶ 38. Public Storage does not separately address the Cooks' conversion and statutory theft claims in the context of its motion to dismiss. In particular, it does not present a developed argument to show that its motion to dismiss the Cooks' claims for conversion and statutory theft was incorrectly denied if we hold that the Cooks were authorized to store their property in the leased space and that Wis. Stat. § 704.90(12) permits the Cooks to sue for violations of § 704.90. We therefore conclude the circuit court did not err in denying Public Storage's motion to dismiss the conversion and statutory theft claims.

II. Public Storage's Motion for Summary Judgment on Wis. Stat. § 704.90 Notice Violations

¶ 39. In its motion for summary judgment, Public Storage contended that, based on the undisputed facts,

it was entitled to judgment on the claims of all the plaintiffs—Luckett as well as the Cooks—for violation of the notice provisions in WIS. STAT. § 704.90(5)(b).[9] The court denied the motion on the ground there were disputed issues of fact. On appeal, Public Storage contends that the circuit court's error in concluding the Cooks were "lessees" within the meaning of § 704.90(1)(c) caused it to err in analyzing Public Storage's obligations under the notice provisions, and, if the statute is correctly construed, there are no material factual disputes. We do not resolve whether the Cooks were "lessees" under the statutory definition of § 704.90(1)(c), because even if they are not, we conclude the summary judgment submissions showed there were factual disputes as to whether Public Storage had violated the notice provisions. In the analysis below, we assume without deciding that the Cooks were not "lessees" under § 704.90(1)(c).

¶ 40. A party is entitled to summary judgment if there are no genuine issues of material fact and that party is entitled to judgment as a matter of law. WIS.

---

[9] Public Storage's motion for summary judgment also repeated its arguments on its motion to dismiss concerning the Cooks' status under WIS. STAT. § 704.90 and under the rental agreement. We do not separately address in the summary judgment context the issues of statutory and contract construction that we have already resolved in Section I of this opinion.

In particular, we do not address the plaintiffs' factual submissions to support their position that the rental agreement is properly construed to permit the Cooks to store their property in the leased space. It may be that the summary judgment material or the testimony at trial provides a factual basis for alternative theories on which to conclude that the Cooks were authorized to store their property in the leased space. However, we have already construed the rental agreement in this way without extrinsic evidence.

S<small>TAT.</small> § 802.08(2). We employ the same methodology as the circuit court and our review is de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–16, 401 N.W.2d 816 (1987). In analyzing the factual submissions, we view them most favorably to the opposing party and draw all reasonable inferences in favor of that party. *Burbank Grease Servs. v. Sokolowski*, 2006 WI 103, ¶ 40, 294 Wis. 2d 274, 717 N.W.2d 781.

¶ 41. The notice provisions at issue here prohibit an operator from selling personal property stored in a leased space unless the operator has provided two notices. W<small>IS.</small> S<small>TAT.</small> § 704.90(5)(b), (6)(a)(intro), (6)(a)2. The first notice must be "sent by regular mail to the last-known address of the lessee and the person, if any, specified in the rental agreement . . ." and must contain notice of the default and other information. Section 704.90(5)(b)1. The second notice must be "sent by certified mail to the last-known address of the lessee" and must include notice that the operator has a lien on the stored property and that it will be sold at a specified time and place unless the amount demanded is paid by a statutorily prescribed date. Section 704.90(5)(b)2. "Last-known address" means "the address provided by a lessee to an operator in the most recent rental agreement. . . . or the address provided by a lessee to an operator in a written notice of a change of address, whichever address is provided later." Section 704.90(1)(am).

¶ 42. The summary judgment submissions, viewed most favorably to the plaintiffs, show the following. Luckett wrote his address, 9060 N. 85th Street, on the "Occupant Information Sheet." Even if the "N" Luckett wrote on the Occupant Information Sheet might be misread as a "W," all the numbered streets in the City of Milwaukee run north/south and anyone

452

living in Milwaukee for any length of time would know this. On the rental agreement, which Public Storage prepared, a Public Storage employee typed "W. 85 St." Luckett initialed the text below the incorrect address and other provisions at the beginning of the rental agreement, and thus, according to that text, acknowledged "that the above information is correct . . . ." When Luckett placed his initials there, he did not notice that Public Storage had typed a "W" instead of "N." When Luckett wrote down the address for his brother, James Anthony, as an alternate contact, he told the Public Storage employee that he thought the address was incorrect. She said that was okay as long as the telephone number was correct.

¶ 43. In May 2005, when the Cooks and Luckett moved from 9060 N. 85th Street, Quincle filled out a post office change-of-address form for all of them to show their new address on Teutonia. After the move, Luckett called Public Storage to tell them they had moved; he did not know the new address but gave them their new phone number and Kim Cook's phone number. In June 2005, Quincle went to the Public Storage office to make a payment to bring the account current through June, and at that time she told a Public Storage employee that they had moved from 9060 N. 85th Street. The employee gave her a blank piece of paper and Quincle wrote down her new address, including Zachary's name, Kim's address, James Anthony's address, and the telephone numbers. The employee did not give her a change-of-address form.

¶ 44. There is no dispute that Public Storage sent the two notices required by Wis. Stat. § 704.90(5)(b) to Luckett at 9060 W. 85th Street and that they were returned as undeliverable. There is no evidence that any notice was sent to James Anthony.

453

¶ 45. Public Storage contends that, because Luckett initialed the text in the rental agreement indicating that "9060 W. 85th Street" was accurate, that is the last-known address he provided. We disagree.

¶ 46. Luckett provided his address in the Occupant Information Form. The only reasonable inference is that a Public Storage employee incorrectly transferred the address to the rental agreement. It is undisputed that Luckett did not catch the error when he initialed the rental agreement. We conclude that to construe "the address provided by a lessee to an operator in the most recent rental agreement," WIS. STAT. § 704.90(1)(am), to mean the correct address actually provided by a lessee in the information form is more reasonable than to construe it to mean the incorrect address the operator transferred to the rental agreement. A significant purpose of the "last-known address" definition is to provide the operator with an address on which it can rely for meeting its obligations to send the required notices in para. (5)(b), as well as other notices that may be required or desirable. This purpose is accomplished when the lessee provides an address to the operator in writing, which the operator can then retain and rely on. It is more reasonable to place the responsibility on the operator to accurately transfer the address to the rental agreement than on the lessee to catch the operator's mistake.

¶ 47. Public Storage also contends that, if Quincle is not a "lessee" under WIS. STAT. § 704.90(1)(c), then only Luckett, not his mother, may provide new addresses for either him or the alternate contact. The summary judgment submissions, viewed most favorably to the plaintiffs, show that Public Storage knew

454

Luckett had authorized Quincle to store her property in the leased space, knew she was his mother and the mother of James Anthony, knew she lived with Luckett, and knew Luckett had called to say he had moved but did not know the new address. Public Storage also accepted payment for the leased space from Quincle. Based on this evidence, a reasonable inference is that Quincle was acting on Luckett's behalf in providing the new addresses and Public Storage knew this. The phrase "provided by a lessee" in the definition of "[l]ast-known address," WIS. STAT. § 704.90(1)(am), does not expressly require that the lessee provide the address in person. We conclude it is more reasonable to construe "the address provided by a lessee" to include an address provided by a person acting on behalf of the lessee who the operator knows is acting on the lessee's behalf than it is to restrict it to the lessee himself or herself. This construction fulfills the purpose of providing the operator with an address or addresses on which it can rely for sending notices, and it better fulfills the equally important purpose of ensuring that the address on which the operator relies is the most current one.

¶ 48. Based on our construction of WIS. STAT. § 704.90(1)(am), we conclude the summary judgment submissions showed there were material issues of fact that required a trial on whether Public Storage violated the notice requirements in para. (5)(b). Accordingly, we conclude the circuit court properly denied Public Storage's motion for summary judgment on these claims.[10]

---

[10] In the context of making these statutory construction arguments, Public Storage appears to ask us to review the court's answer "yes" to the question "Did Public Storage fail to provide a notice of default to the last-known address of the

III. Public Storage's Motion for Summary Judgment on Claims for Conversion and Statutory Theft of Excess Proceeds

¶ 49. Public Storage contends the circuit court erred in denying its motion for summary judgment on the plaintiffs' common law claim that it converted the excess proceeds from the sale and on their statutory claim that it violated Wɪs. Sᴛᴀᴛ. § 895.446 and Wɪs. Sᴛᴀᴛ. § 943.20 by intentionally retaining the excess proceeds with the intent of permanently depriving the plaintiffs of them.[11] Public Storage argued in the circuit court, as it does on appeal, that, because it handled the excess proceeds as required by Wɪs. Sᴛᴀᴛ. § 704.90(6)(b), it could not be liable for converting them or for statutory theft.

---

alternate name listed on the Rental Agreement?" However, Public Storage does not provide a developed argument with sufficient explanation of the trial testimony that bears on this question and the legal standard applicable in evaluating whether the court erred in answering "yes." We therefore do not separately address the court's answer to this question.

[11] With respect to conversion, the jury was instructed that the elements are that the defendant intentionally took the plaintiffs' property or money without consent or without lawful authority and thereby seriously interfered with the plaintiffs' right to possess the property. They were instructed that the elements of statutory theft under Wɪs. Sᴛᴀᴛ. § 895.446 and Wɪs. Sᴛᴀᴛ. § 943.20 are that a company having possession or custody of money of another by virtue of its business intentionally retains possession of such money without the owner's consent contrary to the company's authority and with the intent to convert the money to the company's own use. Although the jury determined that Public Storage did not commit statutory theft, we discuss this claim here because Public Storage contends that the court's erroneous failure to grant summary judgment on this claim resulted in irrelevant and unfairly prejudicial evidence being presented to the jury.

¶ 50. WISCONSIN STAT. § 704.90(6)(b) provides that the operator must first apply the proceeds of the sale to satisfy its lien on the property for the amount owed and then "report and deliver any balance to the state treasurer as provided under ch. 177 [of the Uniform Unclaimed Property Act]." Public Storage's position is that, under WIS. STAT. ch. 177, it was not required to report and deliver to the state treasurer the excess proceeds from the sale occurring on August 26, 2005, until October 31, 2006. *See* 2005 Wis. Act 400, § 5. It is undisputed that Public Storage delivered the excess proceeds of $407 in December 2005.

¶ 51. The circuit court denied Public Storage's motion. The summary judgment submissions included evidence that Quincle had gone to Public Storage on August 26, 2005, to pay the August rent and was informed then that the property had been sold, but was given no information about the sale, was not told about the excess proceeds, and was told to "get a lawyer." There was also evidence that Luckett's account was credited as of August 26, 2005, with rent being paid through January 31, 2006, and evidence that in 2004 Public Storage had not filed any excess proceeds with the state treasurer. The circuit court concluded this evidence was sufficient to require a trial on Public Storage's intent in keeping the excess proceeds until December 2005. The court rejected Public Storage's argument that, regardless of its intent in retaining them until December 2005, it could not be liable for conversion or statutory theft because it had a right under WIS. STAT. ch. 177 to hold the excess proceeds until October 31, 2006.[12]

---

[12] The circuit court did grant summary judgment in favor of Public Storage on the claim that it violated WIS. STAT. § 704.90(6)(b) by failing to report and deliver the excess proceeds to the state treasurer.

¶ 52. WISCONSIN STAT. ch. 177 provides a mechanism for the holder of abandoned property to report it and deliver it to the administrator on an annual basis, after sending written notice with prescribed contents to the apparent owner at his or her last-known address. WIS. STAT. § 177.17(1), (4), (5). The administrator publishes a notice on an annual basis of the names of the persons appearing to own the abandoned property, and persons claiming an interest in the property may file claims with the administrator to recover it and file a court action if aggrieved by the administrator's decision. WIS. STAT. §§ 177.18, 177.24, 177.26.

¶ 53. Public Storage relies on WIS. STAT. § 177.165, which provides that "the proceeds of a sale under s. 704.90(6) of personal property stored in a leased facility located within a self-service storage facility after satisfaction of the operator's lien under s. 704.90(3)(a) is presumed abandoned." According to Public Storage, because the excess proceeds were presumed abandoned, its only obligation was to comply with the notice, report, and delivery requirements of WIS. STAT. ch. 177, and, because it did not violate those, it is not, as a matter of law, liable for conversion or statutory theft.

¶ 54. We agree with the circuit court and the plaintiffs that Public Storage's proposed construction of WIS. STAT. ch. 177 is unreasonable. The evident purpose of the statute is to give persons claiming an interest in abandoned property an opportunity to recover it and, if they do not, the state benefits, not the holder of the abandoned property. The statute imposes obligations on the holder of the property to facilitate the opportunity for recovery of the abandoned property by persons claiming an interest in it; it does not purport to give the

holder any rights with respect to the property. Certainly, if a holder complies with its obligations under ch. 177, it may not for that reason alone be held liable for conversion or statutory theft. However, neither this chapter nor Wis. Stat. § 704.90(6) can be reasonably read to provide a defense to those claims based on conduct that is not required by ch. 177. While excess proceeds from sales under § 704.90(6) are presumed abandoned, nothing in ch. 177 suggests that this presumption may not be overcome. Nothing suggests that the holder may continue to hold the excess proceeds even if the person whose property was sold presents himself or herself in person to the holder or otherwise contacts the holder. Such a construction is unreasonable because it is inconsistent with the evident purpose of the statute, which is to provide an opportunity for persons who claim an interest in abandoned property to recover it.[13]

¶ 55. We conclude the circuit court properly denied Public Storage's motion for summary judgment on the common law conversion and statutory theft claims regarding the excess proceeds.[14]

---

[13] In its reply brief, Public Storage relies on a provision in an earlier version of Wis. Stat. ch. 177 to argue that property that is presumed abandoned under the current Wis. Stat. § 177.165 must be treated as abandoned regardless of the circumstances. We consider legislative history only if we first conclude a statute is ambiguous. *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 50, 271 Wis. 2d 633, 681 N.W.2d 110. Here there is no ambiguity to resolve because, based on the statutory text, we have rejected Public Storage's proposed construction as unreasonable.

[14] Public Storage argues there were erroneous jury instructions and inadmissible evidence on these two claims. However, as we understand these arguments, they are all premised on

## IV. Dismissal of Public Storage's Counterclaims

¶ 56. Public Storage contends, in one sentence, that the circuit court erred in dismissing its counterclaims of breach of contract and trespass for the same reason the court erred in denying its motion to dismiss and motion for summary judgment. We understand these counterclaims to be premised on Public Storage's position that the Cooks were not authorized under the rental agreement to store their property in the leased space. Because we have concluded they were authorized to do so, we conclude the circuit court properly dismissed these counterclaims.

## V. Jury Instructions on Commercially Reasonable Sale

¶ 57. WISCONSIN STAT. § 704.90(6)(a)7. requires that the sale of the personal property stored in a leased space be "conducted in a commercially reasonable manner." Public Storage proposed that the jury be instructed based on the standard in WIS. STAT. § 409.627(2), which provides that a sale under WIS. STAT. ch. 409 is deemed commercially reasonable if made "[i]n the usual manner on any recognized market" or "in conformity with reasonable commercial practices among dealers in the type of property that was the

Public Storage's contention that, because it did not violate WIS. STAT. ch. 177, it could not, as a matter of law, be liable for either common law conversion or statutory theft. Because we have concluded this premise is incorrect, we do not address these arguments. Public Storage may be contending that, even if its view of the law on this point is incorrect, the court nonetheless erred in rejecting its offer to stipulate that it "would not force Luckett to prove 'intent' to commit statutory theft." However, it does not present a developed argument on this point. Therefore, we do not address it.

subject of the disposition." The key portion of Public Storage's proposed instruction is:

> The commercial reasonableness of a sale can be proven in one of three ways. A sale is commercially reasonable if the self-storage facility operator:
>
> (1) sells the property in the usual manner on any recognized market for the property; or
>
> (2) sells the property at the price current in any recognized market at the time of the sale; or
>
> (3) sells in conformity with reasonable commercial practices among dealers in the type of property sold.[15]

(Footnotes omitted; footnote added.)

---

[15] Public Storage's proposed instruction in full states:

**704.90—Duty To Conduct Sale In A Commercially Reasonable Manner**

A self-storage facility operator has a duty to sell the property contained in a storage space in a commercially reasonable manner. Whether a sale is commercially reasonable depends on the circumstances surrounding the sale and varies with the product being sold, the industry in which it is sold, the costs associated with a particular sale procedure; and the time when the sale occurs. In determining whether a sale was commercially reasonable, the primary focus is not the amount garnered from the sale but the procedures used in the sale. The commercial reasonableness of a sale can be proven in one of three ways. A sale is commercially reasonable if the self-storage facility operator:

> (1) sells the property in the usual manner on any recognized market for the property; or
>
> (2) sells the property at the price current in any recognized market at the time of sale; or
>
> (3) sells in conformity with reasonable commercial practices among dealers in the type of property sold.

(Footnotes omitted.)

¶ 58. The circuit court did not give Public Storage's proposed instruction, but instead instructed the jury:

> Whether the auction was commercially reasonable is for you to decide based upon all the surrounding facts and circumstances. Public Storage owed a duty to the plaintiffs to use all fair and reasonable means to obtain the best price for the plaintiffs' property, although it was not required to use extraordinary means to accomplish this result.

¶ 59. Public Storage contends the circuit court misstated the law in giving the instruction it did and failing to give an instruction based on WIS. STAT. § 409.627. According to Public Storage, because WIS. STAT. § 704.90(6)(a)7. uses the same term, "commercially reasonable," the definition of that term in § 409.627 applies to sales under § 704.90(6). Public Storage does not provide a citation to the transcript of the jury instruction conference or any other point in the proceedings at which the court explained why it was declining to give Public Storage's proposed instruction. From our reading of the transcript of the post-verdict motion hearing, it appears the court concluded that § 409.627 applied to secured transactions and, because this was not a secured transaction but was more in the nature of a landlord's lien, the common law standard for commercial reasonableness applied.

¶ 60. The circuit court has broad discretion in instructing the jury. *Arents v. ANR Pipeline Co.*, 2005 WI App 61, ¶ 42, 281 Wis. 2d 173, 696 N.W.2d 194. We affirm the circuit court's choice of jury instructions if they accurately state the law and comport with the facts of record. *Id.* Whether the instructions are a correct statement of law is a question of law, which we review

de novo. *State v. Wille,* 2007 WI App 27, ¶ 23, 299 Wis. 2d 531, 728 N.W.2d 343. The choice among requested instructions that correctly state the law is a matter for the circuit court's discretion. *Id.*

¶ 61. We conclude the circuit court did not misstate the law. Public Storage provides no case holding that the definition of "commercially reasonable" in Wis. Stat. § 409.627 applies to sales under Wis. Stat. § 704.90(6). Public Storage relies on *Appleton State Bank v. Van Dyke Ford, Inc.,* 90 Wis. 2d 200, 279 N.W.2d 443 (1979), and *Vic Hansen & Sons, Inc. v. Crowley,* 57 Wis. 2d 106, 203 N.W.2d 728 (1973). However, these cases concern transactions covered by Wis. Stat. ch. 409, "UCC-Secured Transactions." Moreover, in both these cases the court recognized that, even in transactions covered by ch. 409, the common law standard was still applicable: a secured party must use "all fair and reasonable means in obtaining the best price . . . ." *Appleton State Bank,* 90 Wis. 2d at 205 (citing *Vic Hansen,* 57 Wis. 2d at 111–12).

¶ 62. In addition, Wis. Stat. § 409.109(4)(a) provides that the chapter does not apply to "[a] landlord's lien . . . ." Wisconsin Stat. § 704.90 is contained in Wis. Stat. ch. 704, entitled "Landlord and Tenant." Wisconsin Stat. § 704.11 refers to § 704.90 as one of a few specified situations in which a landlord has a "right to a lien on the property of the tenant." Therefore, Wis. Stat. ch. 409 does not apply to the lien the operator has under § 704.90, and the circuit court was not obligated to instruct the jury according to that chapter.

¶ 63. We see no error of law and no erroneous exercise of discretion in the circuit court's choice to instruct as it did on commercial reasonableness under Wis. Stat. § 704.90(6)(a)7.

¶ 64. Public Storage also contends that the court, in denying the plaintiffs' motion for summary judgment based on commercial unreasonableness, adopted Public Storage's view of the law. Public Storage refers to this as "the law of the case" and contends that it was misled into thinking the court agreed with its standard for commercial reasonableness and was prejudiced when the court unexpectedly changed its mind. We reject this argument.

¶ 65. The transcript of the court's ruling on summary judgment indicates that the court was pondering a number of factual and legal issues in deciding to deny the plaintiffs' motion, but it decided only that Public Storage was entitled to a trial. It did not resolve the issue of the correct standard to apply in deciding whether the sale was "commercially reasonable" under WIS. STAT. § 704.90(6)(a)7. There was no "law of the case" on this point. If Public Storage was uncertain whether the court had resolved this issue, it could have asked for clarification at any time. Apparently, it did not do so. Indeed, Public Storage does not state that it ever objected to the court's decision on the jury instruction on the ground that it had been misled by the court's earlier comments.[16]

---

[16] Public Storage contends the circuit court erroneously refused to permit cross-examination regarding "*Wisconsin's* standard of 'commercial reasonableness' " (emphasis in Public Storage's brief), ruling that the legal standards would be covered in the instructions, and inappropriately refused to permit Public Storage to argue in its closing statement that its conformity with reasonable industry standards supported the commercial reasonableness of the sale. Public Storage fails to explain why these rulings, which comport with the jury instruction given, are erroneous if the instruction did not misstate the law. We therefore do not further address these rulings.

## VI. Sufficiency of Evidence of Punitive Damages

¶ 66. Public Storage contends the circuit court erred in permitting the issue of punitive damages to go to the jury because there was insufficient evidence to meet the legal standard. It points to the evidence that it made phone calls to Luckett and sent extra notices on prior occasions, which it was not required to do, and asserts that, while "its preparation for auction was not perfect," it was "mere negligence" and thus not sufficient for a punitive damages award.

¶ 67. WISCONSIN STAT. § 895.043(3) allows a plaintiff to recover punitive damages if "evidence is submitted showing that the defendant acted maliciously . . . or in an intentional disregard of the rights of the plaintiff." A defendant acts in intentional disregard of the rights of a plaintiff if the defendant

> act[ed] with a purpose to disregard the plaintiff's rights, or [was] aware that his or her acts [we]re substantially certain to result in the plaintiff's rights being disregarded[, and if the conduct] actually disregard[ed] the rights of the plaintiff . . . [and if the conduct was] sufficiently aggravated to warrant punishment by punitive damages.

*Strenke v. Hogner*, 2005 WI 25, ¶ 38, 279 Wis. 2d 52, 694 N.W.2d 296. Whether the evidence, if believed by the jury, is sufficient to meet this standard presents a question of law, which we review de novo. *See id.*, ¶ 13.

¶ 68. We conclude the evidence presented by the plaintiffs, if believed by the jury, is sufficient to meet the requisite standard for punitive damages. First, evidence was sufficient to show that Public Storage was aware that its conduct was substantially certain to

result in the disregard of the plaintiffs' rights in several respects. There was evidence that Quincle provided Public Storage with a written address change, which it ignored, and that Public Storage never sent a notice to the alternate contact. The testimony of the property manager at Public Storage provided a reasonable basis for the jury to find that she knew that "West 85th Street" was a non-existent address and nonetheless sent the July notices of default and sale to the non-existent address. There was evidence from the current district manager of Public Storage that a review of the file showed four "red flags" that should have kept the sale from occurring: one was that letters to the non-existent address of "West 85th Street" were returned as undeliverable and another was that the amount of property in the space, combined with the payment history, suggested the property was not abandoned. This evidence was sufficient to show an awareness by an employee or employees of Public Storage that her or their conduct was substantially certain to result in the disregard of Luckett's right to notice of the sale and the right of all plaintiffs to prevent the sale of their property by curing the default.

¶ 69. In addition, there was evidence that at least one of Public Storage's employees present at the sale knew the leased space was full and the contents were carefully packed, and knew that the manner in which the sale was conducted was such that the buyers would have no idea what they were bidding on.[17] This evidence is sufficient to show an awareness that the manner of conducting the sale was substantially certain to result in a price that was unreasonably low, in

___

[17] According to Public Storage's policy, potential buyers had to bid on the entire unit; the door was opened but potential buyers could not go into the unit and could not open any boxes to see what was inside.

disregard of the plaintiffs' right to a commercially reasonable sale of their property.

¶ 70. There was also evidence that showed Public Storage was aware that its conduct was substantially certain to result in disregard of the plaintiffs' right to the excess proceeds. There was evidence that Quincle appeared on the day of the sale and, when she learned of the sale and asked how she could get her property back, the property manager refused to help her, mocked her, and said to her, "[c]all your lawyer," even though the plaintiffs' property was still in the same unit because the buyers had rented that unit. No one informed Quincle about the excess proceeds. Public Storage's records show that the excess proceeds were identified as "pre-paid rent," even though Public Storage knew all the plaintiffs' property had been sold and the unit was being rented by the buyers. The company's records also showed a "Refund," even though no refund was paid at the time. Although Public Storage's CFO of Operations initially testified that the excess proceeds were "always in a liability account" and "stay[ed] in that liability account until they [we]re turned back to the state," on cross-examination he acknowledged that the excess proceeds were deposited into the company's general cash account. The evidence also showed that Public Storage did not escheat any funds to the state from the sales it conducted in 2004 until discovery was conducted.

¶ 71. Second, the evidence was sufficient to show that Public Storage's conduct resulted in an actual disregard of the plaintiffs' rights. It is undisputed that the plaintiffs lost their stored property and did not receive the excess proceeds until months later. The jury found Public Storage converted the property and the excess proceeds. The jury also found that the lack of notice to Luckett and the alternate contact caused

injury. Finally, the jury found that the sale was not conducted in a commercially reasonable manner and that the excess proceeds would have been substantially greater had it been. Public Storage has not presented a developed argument that the evidence was insufficient to support these findings by the jury.

¶ 72. Third, the evidence was sufficient to show aggravated conduct of the type that warrants punitive damages. While there was evidence that the conduct of some employees at some times was helpful to the plaintiffs, the jury could reasonably decide to focus on the conduct that caused the plaintiffs' injuries. Sending required notices to an address the employee knew was non-existent is aggravated conduct because the employee knew the result of not curing the default would be the sale of the property in the leased space, knew the file indicated the property was not abandoned, and had no reason to think it was abandoned. It is also aggravated conduct to fail to even mention the excess proceeds when one of the plaintiffs presented herself in the office just after the sale and to fail to return the proceeds until contacted by the plaintiffs' lawyer, when the evidence shows Public Storage could have done so soon after the sale. There may be evidence of other aggravated conduct, but this is sufficient to satisfy the third part of the *Strenke* standard. The conduct we summarize is not simply inadvertence or a failure to exercise ordinary care, but instead shows an intentional disregard of the rights of the plaintiffs that warrants punitive damages.

VII. Harmless Error Analysis of Failure to Dismiss the Cooks' Contract Claims

¶ 73. We now consider, in light of the rulings we have made thus far, whether the court's error in deny-

ing Public Storage's motion to dismiss the Cooks' contract claims was harmless. An error is harmless if there is no reasonable possibility that the error contributed to the outcome of the action. *See Schwigel v. Kohlmann*, 2005 WI App 44, ¶ 11, 280 Wis. 2d 193, 694 N.W.2d 467.

¶ 74. Public Storage argues generally that the court's erroneous failure to dismiss the Cooks' claims requires a new trial on the amount of Luckett's compensatory damages because most of the property included in the jury's valuation of $19,000 belonged to the Cooks. However, Public Storage does not address the situation at hand: the court's only error was in failing to dismiss the Cooks' contract claims and the other claims were properly before the jury.

¶ 75. Our own review of the record persuades us that the error was harmless with respect to the compensatory damages award. The jury was instructed on the notice and commercially reasonable sale requirements of Wis. Stat. § 704.90. It found violations of these provisions. It found the notice failures caused "harm to the [p]laintiffs" and also determined that the value of "the property stored by the [p]laintiffs [was] $19,000." Therefore, the plaintiffs are entitled to $19,000 in compensatory damages for the statutory violations— less the amounts owed to Public Storage—even if the Cooks' contract claims were dismissed before trial. While most of the $19,000 is attributable to the Cooks' property, they are entitled to recover for the loss of their stored property because they were injured by the violations of the statutory notice provisions.

¶ 76. In addition, the jury determined "Public Storage unlawfully convert[ed] the [p]laintiffs' personal

property when it sold the [p]laintiffs' personal property at auction." The proper measure of damages for this claim is the value of all the property sold, less the amounts owed Public Storage.

¶ 77. Public Storage also argues that the issue of punitive damages needs to be retried if any claim is reversed because the plaintiffs asked the jury to consider the conduct underlying

> multiple legal claims as their foundation for punitive damages, including the purported failure to mail the statutory notices to Luckett; the failure to mail the first notice of default to an alternate contact; the purported failure to conduct the auction in a commercially reasonable manner; the claimed conversion of plaintiffs' personal property; and the claimed theft and conversion of Luckett's excess proceeds.

However, this argument does not explain why a new trial on punitive damages is required if only the Cooks' contract claims are reversed.[18] Evidence of all the above conduct would still properly be before the jury. *See Schwigel*, 280 Wis. 2d 193, ¶¶ 10–17 (failure to instruct jury that punitive damages could not be considered for breach of contract claim was harmless error because the conduct relating to that claim was relevant to the punitive damages award on the other claims).

¶ 78. We conclude the circuit court's error in failing to dismiss the Cooks' contract claims was harmless and does not warrant a new trial on either compensatory or punitive damages.

---

[18] The jury was instructed to answer the punitive damages question only if it answered "yes" to one of the questions on the statutory violations or the conversion claims.

VIII. Exculpatory and Damage Limitation Clauses

¶ 79. Public Storage contends that the circuit court erred in failing to enforce this provision of the rental agreement:

> 5. LIMITATION OF OPERATOR'S LIABILITY; INDEMNITY. Operator and Operator's Agents will have no responsibility to Lessee or to any other person for any loss, liability, claim, expense, damage to property or injury to persons ("Loss") from any cause, including without limitation, Operator's and Operator's Agents' active or passive acts, omissions, negligence or conversion, unless the Loss is directly caused by Operator's fraud, willful injury or willful violation of law . . . . **Lessee agrees that Operator's and Operator's Agents' total responsibility for any Loss from any cause whatsoever will not exceed a total of $5,000.** By placing his INITIALS HERE [Luckett's initials], Lessee acknowledges that he understands and agrees to the provisions of this paragraph. (Bold and capitalization in original)

We refer to the first sentence as an exculpatory clause because, with certain limitations, it provides for no liability. We refer to the second sentence, limiting liability to $5,000, as a limitation on liability. *See Rainbow Country Rentals v. Ameritech Pub., Inc.,* 2005 WI 153, ¶¶ 25, 25 n.2, 26, 286 Wis. 2d 170, 706 N.W.2d 95 (distinguishing between an exculpatory clause and a restriction on the amount or type of recoverable damages).

¶ 80. Public Storage contended in the circuit court, as it does on appeal, that under the exculpatory clause it had no liability to the plaintiffs, and, in the alternative, under the limitation on liability clause, its liability for all compensatory and punitive damages, costs, and attorney fees is limited to $5,000. The circuit

court concluded that the exculpatory clause did not apply because the jury's finding on violations of Wis. Stat. § 704.90 and its finding that Public Storage acted maliciously or in intentional disregard of the plaintiffs' rights established a willful violation of law. The court also concluded that the limitation of liability clause was inconsistent with the public policy expressed in § 704.90 and was therefore unenforceable.

¶ 81. We agree with the circuit court and the plaintiffs that the jury's finding on the statutory violations coupled with the finding on punitive damages establishes a "willful violation of law" within the meaning of the exculpatory clause. We have already concluded that there is sufficient evidence to satisfy the standard for punitive damages of acting in intentional disregard of the plaintiffs' rights. We do not agree with Public Storage that, because the jury was not specifically asked to determine that there was a "willful violation of law," the exception cannot be established. Public Storage does not advise us that it asked for such an instruction. Moreover, a reasonable construction of "willful violation of law" is that it encompasses an intentional disregard of the plaintiffs' rights under Wis. Stat. § 704.90. To the extent there are reasonable constructions that are narrower, we resolve any ambiguity against Public Storage. *See Seitzinger*, 270 Wis. 2d 1, ¶ 22. Accordingly, we conclude the exculpatory clause does not relieve Public Storage of all liability.

¶ 82. Turning to the limitation on liability clause, we consider separately its application to punitive damages, to attorney fees and costs under Wis. Stat. § 704.90(12), and to compensatory damages under that statute.

¶ 83. With respect to punitive damages, we conclude the limitation of liability clause is unenforceable because it is against public policy. Punitive damages serve the public policy purposes of punishing wrongdoers and deterring others. *Franz v. Brennan*, 150 Wis 2d 1, 8, 440 N.W.2d 562 (1989).[19] Public Storage has not provided, nor have we found, any authority for the proposition that punitive damages may be limited by contract. The analysis for determining whether a limitation of liability or liquidated damages clause is valid focuses on the reasonableness of the limitation in light of the injury *anticipated by a breach of the contract;* the underlying policies relate to the desirability of the parties controlling their exposure to risk in the event of a breach of contract. *Rainbow Country Rentals*, 286 Wis. 2d 170, ¶¶ 28–29. This analysis plainly does not apply to punitive damages, which involve conduct that parties do not reasonably anticipate when they enter into contracts and which are not even available in a contract action. *See Schwigel*, 280 Wis. 2d 193, ¶ 10 (punitive damages not available in breach of contract action).

¶ 84. With respect to attorney fees and costs, we conclude the limitation on liability is inconsistent with the public policy expressed in WIS. STAT. § 704.90. Like the circuit court, we find *Wisconsin Central Farms, Inc. v. Heartland Agricultural Marketing, Inc.*, 2006 WI App

---

[19] Punitive damages, established at common law, are now addressed in WIS. STAT. § 895.043. *See Strenke v. Hogner*, 2005 WI 25, ¶ 15, 279 Wis. 2d 52, 694 N.W.2d 296. However, we see nothing in the statute nor the case law applying it that would call into question the general purpose of punitive damages articulated in the earlier case law.

199, 296 Wis. 2d 779, 724 N.W.2d 364, instructive. In that case we concluded that a contract provision that limited liability to the price allocable to the product and prohibited imposing " 'penalties, damages, costs or losses of any description' on [the wholesaler]" was unenforceable because it violated the double damages provision of Wis. Stat. § 100.01(4) (1999–2000).[20] *See id.*, ¶¶ 21, 24. We reasoned that the double damages provision "work[ed] in tandem" with the provisions in § 100.01(2) (1999–2000) defining unfair conduct and was the "sole incentive to private parties to initiate actions to enforce the statute." *Id.*, ¶ 24. We also concluded that the private and public interests the statute was designed to protect would be undermined if parties could waive provisions in § 100.01 (1999–2000). *Id.*, ¶ 25.

¶ 85. In Wis. Stat. § 704.90(12), the legislature has provided that persons injured by a violation of the statute, "[i]n addition to the remedies otherwise provided by law," may "bring a civil action to recover damages together with costs, disbursements and reasonable attorney fees . . . ." The purpose of attorney fees in statutes that provide rights for individuals is to encourage attorneys to take cases where the pecuniary loss is small in relation to the cost of litigation. *See Shands v. Castrovinci*, 115 Wis. 2d 352, 358, 340 N.W.2d 506 (1983). Not only do individuals with meritorious claims benefit, but the aggregate effect of such actions

---

[20] Wisconsin Stat. § 100.01(4) (1999–2000) provides:

(4) Double damages. A produce wholesaler who violates any provision of sub. (2) shall be liable to any person injured thereby for twice the amount of damages sustained in consequence of such violation and such liability may be enforced by suit in any court of competent jurisdiction.

is to enforce the public rights and deter conduct that is impermissible under the statute. *See id.* Thus, like the double damages provision in *Central Farms*, the attorney fees provision in § 704.90(12) is the incentive for private parties to bring actions to enforce the statute.[21] We conclude it is unreasonable to read § 704.90 to permit a contract provision to eliminate or reduce reasonable attorney fees.

¶ 86. We reach the same conclusion with respect to compensatory damages. The legislature has chosen to establish a comprehensive scheme protecting persons who store their personal property in self-service storage under a rental agreement. The legislature has provided that persons injured by a violation of the statute may bring "a civil action to recover damages" "[i]n addition to the remedies otherwise provided by law." Wis. Stat. § 704.90(12). This expresses the legislature's intent that operators comply with the statute and compensate persons injured when operators do not. Regardless of whether this limitation of liability for compensatory damages may be permissible in a breach of contract action—an issue we do not decide—enforcing such a limitation in an action under § 704.90(12) negates pro-

---

[21] Public Storage distinguishes *Wisconsin Central Farms, Inc. v. Heartland Agricultural Marketing, Inc.*, 2006 WI App 199, 296 Wis. 2d 779, 724 N.W.2d 364, on the ground that it dealt with an exculpatory clause, not a limitation of damages. We do not agree with this reading of the case, even assuming for the sake of argument such a distinction would be relevant. In addition to stating that certain items were excluded from liability, the contract stated that "liability on any claim of any kind . . . shall in no case exceed the price allocable to the potatoes which gives rise to the claim." *Id.*, ¶ 21 n.11.

tections the legislature intended to provide in § 704.90 generally and in § 704.90(12) particularly.

¶ 87. Public Storage relies on language in a divorce case, *Nichols v. Nichols*, 162 Wis. 2d 96, 469 N.W.2d 619 (1991). There the court rejected an argument that a stipulation not to modify maintenance would "nullify" the statute authorizing the court to modify maintenance. *Id.* at 106. The court concluded there was nothing in that statute prohibiting parties from entering into stipulations that modify its terms and also stated that the court had previously approved such stipulations. *Id.* The court noted—and this is the language on which Public Storage relies—that "[if] the legislature intended to prevent parties from entering into nonmodifiable maintenance agreements, it would have expressly prohibited such agreements" and it cited, without further discussion, two examples from the Fair Dealership Law, WIS. STAT. ch. 135, and the Uniform Commercial Code, WIS. STAT. ch. 402, in which the legislature had done so. *Id.*

¶ 88. *Nichols* does not purport to address the issue of contractually limiting the remedies provided in consumer protection statutes. Nor do we read *Nichols* to establish a broad rule that a court may not analyze the specific statute at issue to discern its meaning simply because there is no express prohibition on contractually limiting statutory remedies or rights. We explained in *Central Farms*, in rejecting an argument that we should look to other statutes that *did* prohibit modifying contract provisions, that under *Kalal*, 271 Wis. 2d 633, ¶ 45 "our primary focus is on the meaning of the language of the statute in question . . . ." *Central Farms*, 296 Wis. 2d 779, ¶ 23. We therefore undertook our own examination of WIS. STAT. § 100.01 (1999–2000). *See id.*, ¶¶ 24–27. This reasoning is not

an impermissible conflict with *Nichols*, as Public Storage suggests. (*Nichols* was not mentioned in *Central Farms*.) Rather, it is a recognition that the decision whether a contract provision limiting statutory remedies is permissible must focus on the particular statute at issue.

¶ 89. In summary, we conclude that the exculpatory clause does not apply and that the $5,000 limitation on liability clause is unenforceable with respect to punitive damages and with respect to attorney fees, costs, and compensatory damages under WIS. STAT. § 704.90.

IX. Attorney Fees

¶ 90. Pursuant to WIS. STAT. § 704.90(12), the circuit court awarded $262,500 in attorney's fees plus costs. The court applied the methodology set forth in *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶¶ 28–30, 275 Wis. 2d 1, 683 N.W.2d 58, under which the court is to begin by determining the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate (the "lodestar"); that amount may then be adjusted upward or downward based on certain additional factors, if applicable and not already taken into account.[22]

¶ 91. The amount of fees awarded is committed to the circuit court's discretion and our review is deferen-

---

[22] The factors that may warrant an upward or downward adjustment to the lodestar are those SCR Rule 20:1.5(a) lists as considerations in determining the reasonableness of a fee:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

tial. *Id.*, ¶ 22. We do not substitute our judgment for that of the circuit court; instead, we affirm if the circuit court "employed a logical rationale based on the appropriate legal principles and facts of record." *Id.* (citations omitted).

¶ 92. Public Storage asserts the award should be substantially reduced because most of the fees could have been avoided if the plaintiffs had engaged in settlement efforts and because many of the claims asserted in the complaint were rejected by the court or the jury.

¶ 93. With respect to settlement efforts, the circuit court carefully considered the materials and arguments submitted by the parties on the history of the settlement discussions and assessed them in light of its own observations of the proceedings. It concluded there

---

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

*Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶ 25, 275 Wis. 2d 1, 683 N.W.2d 58.

was not "much likelihood" that Public Storage would have paid in settlement the amount obtained from the verdict and declined to reduce fees on this ground. The court's decision on this point shows a correct application of law to the relevant facts of record and its conclusion is reasonable.

¶ 94. With respect to the proportion of unsuccessful claims to successful claims, the court disagreed with Public Storage's assertion that there were eighteen claims and twelve were rejected by the judge or the jury. The court identified essentially six claims: violations of WIS. STAT. § 704.90, conversion, breach of contract, breach of the duty of good faith and fair dealing, statutory theft, and violations of the Wisconsin Consumer Act. The first five went to the jury, the court stated, and the plaintiffs recovered on four of those five claims. The court concluded that a reduction in fees because of the unsuccessful claims was not warranted. The court's assessment was that it was "undeniable that the plaintiffs' counsel's effort w[as] met with resounding success here. They got a substantial damage recovery. This action had the ancillary effect of causing Public Storage to change the way it treats surplus sale proceeds." The court referred to *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983), as support for not reducing the attorney fees in this case because of the unsuccessful claims.

¶ 95. In *Hensley*, which established the lodestar approach adopted in *Kolupar*, the Supreme Court addressed the manner in which courts should analyze the reasonable amount of attorney fees under 42 U.S.C. § 1988 when there are successful and unsuccessful claims. 461 U.S. at 433–40. "Where the plaintiff has failed to prevail on a claim that is distinct in all respects

from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440. However, when the claims are related—for example, involving a common core of facts or based on related legal theories—it is "difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435. In this situation, the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* at 440; *see also id.* at 435. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Id.* at 435. Thus, "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440. The Supreme Court expressly rejected an approach of comparing the total number of issues in the case with those actually prevailed on because that approach provided little aid in determining a reasonable fee in light of all the relevant factors. *Id.* at 435 n.11.

¶ 96. In *Kolupar*, the court did not address *Hensley*'s discussion of the distinction between related and unrelated claims. However, it did cite *Hensley* approvingly on the points that " 'the most critical factor is the degree of success obtained,' " and " '[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.' " *Kolupar*, 275 Wis. 2d 1, ¶ 43 (citing *Hensley*, 461 U.S. at 435, 436).

480

¶ 97. Public Storage relies on our statement in *Footville State Bank v. Harvell*, 146 Wis. 2d 524, 540, 432 N.W.2d 122 (Ct. App. 1988), that a "consumer who succeeds on some but not all issues recovers attorney's fees only as to the successfully litigated issues." However in a later decision, *Radford v. JJB Enterprises*, 163 Wis. 2d 534, 550, 472 N.W.2d 790 (Ct. App. 1991), we applied the *Hensley* rule that "the losing party is not entitled to a reduction in attorney's fees for time spent on unsuccessful claims, if the winning party achieved substantial success and the unsuccessful claims were brought and pursued in good faith." We decided this rule was applicable because "all of the plaintiffs' claims arise out of a common core of facts." *Id.* (citations omitted). We distinguished *Harvell* and a later case relying on it, *Chmill v. Friendly Ford - Mercury*, 154 Wis. 2d 407, 453 N.W.2d 197 (Ct. App. 1990), on the ground that in those cases the unsuccessful claims or issues were separate factually and legally from the successful ones. *Radford*, 163 Wis. 2d at 550 n.2.

¶ 98. Thus, in *Radford* we relied on the *Hensley* approach in analyzing unsuccessful claims; and the *Hensley* approach on this point is consistent with *Kolupar*. We therefore reject Public Storage's position that the case law requires a reduction in the hours reasonably spent on litigation solely because a claim was rejected by the court or jury. Instead, we conclude that *Hensley* articulates the correct analysis for the circuit court to employ in determining a reasonable attorney fee when there are successful and unsuccessful claims.

¶ 99. The circuit court applied the correct standard of law when it rejected what it viewed as the "mathematical approach" advocated by Public Storage and instead considered the success achieved by the plaintiffs. Public Storage does not contend that the

481

claims rejected by the court and the jury were unrelated to the successful claims, or otherwise explain why the court erroneously exercised its discretion if, as we have decided, it applied the correct law. Accordingly, we conclude the circuit court did not erroneously exercise its discretion in awarding $262,500 based on the facts before it.

██

¶ 100. However, the facts to which the circuit court must apply the law have changed because of our ruling that the Cooks' claims for breach of contract and duty of good faith and fair dealing should have been dismissed. Because we do not exercise discretion for the circuit court, we must remand for the court to decide the proper award of attorney's fees in light of that ruling and in light of our discussion in this section.

## CONCLUSION

¶ 101. We conclude the circuit court erred in denying Public Storage's motion to dismiss the Cooks' contract claims, but that this error was harmless. We affirm on all other grounds, except that we conclude the issue of the amount of attorney fees must be remanded for consideration in light of our ruling on the Cooks' contract claims.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.